Good morning, Your Honors. So, we're here today on an appeal of a final written decision of an IPR involving one of three patents that Daphne asserted against Ontel in underlying district court litigation. And there's three issues I intend or would like to discuss with infringement liability under the 562 patent. Does that render this appeal moot? And the related question, if so, vacate or not? Exactly. And then the second issue, if we get to it, is whether or not the board's decision that Daphne's secondary considerations evidence was sufficient to overcome the finding of obviousness, whether or not that's supported by substantial evidence. So, I think let's turn to issue one, the mootness issue. So, Daphne contends that it took various actions after this appeal was filed that would render this case moot. First, they contend that... If I could clarify that. My understanding of Daphne's argument is that the joint stipulation to dismiss these patents from the patent infringement action with prejudice was the mooting event. And everything that happened after that, in terms of conveying to you a covenant not to sue or a declaration that it wouldn't exercise any appeal rights, was really just to remove any possible doubt, perhaps in their view, any unreasonable doubt about the actual mooting event that occurred with the joint stipulation. So, could you talk about that? Because I think that's an important premise before we get to so-called unilateral actions. Fair enough, Your Honor. And maybe it'd be helpful to kind of revisit how this purported stipulation came to be. I guess another way of asking it is, the day after the joint stipulation was filed, was Daphne precluded from asserting these patents? No. No. The short answer is no. And let's talk first about kind of how we got there first. Because there were three IPRs that were filed against... And I think it's important to give this background to understand how this stipulation... I'm lost because I'm just trying to put myself in the district court judge's shoes. So, after the joint stipulation to dismiss with prejudice had been filed, and then if somebody had come to them the following day, him the following day, and said, no, I want to reassert these patents, he would have said, no way, you're precluded. It's over. Well, what Daphne did after it filed the stipulation is it challenged it, right? It challenged that stipulation... Can you add a little color to what Judge Chin is saying? Didn't the district court also say dismiss with prejudice, just to kind of add on after the stipulation went into effect? And I think that's what I was going to get into. Daphne offered to withdraw its infringement claims of the 562 patent by filing an amended complaint. And they didn't file an amended complaint to drop those infringement allegations. That's what they offered to do, and that's what the court ordered to do. The joint stipulation... My question though, did the court dismiss them with prejudice? Maybe you should also put some kind of dates on it just to kind of timeline the situation here for us. So in 2022, after the... No, you're working backwards. Start with May 9th, May 9th, 2021, when Daphne sends a letter to the judge saying, if you lift the stay, we will drop these claims. Correct. Eight days later or something, the judge enters that order. You then file a motion for reconsideration. You oppose that, right? They filed a motion for reconsideration. We didn't file a motion for reconsideration. The court entered the order, as you said correctly, Your Honor. And then after the final written decision that we're talking about here was issued, they went back to the court to undo, to vacate the stipulation. I'm sorry, we're skipping ahead in time. Oh, okay. So there's a series of reconsideration requests. I thought that was yours, which the judge denied on July 30th. It then takes till, is it August 9th? Yes, I'm sorry. You have a stipulation of dismissal, and the next day the judge enters the dismissal. That's correct, Your Honor. Then we get to the conditions in the stipulation. Then almost a year goes by, and we get to what, summer of 2022. And at that point, you have filed a re-examination on the patent. And that leads the other side to request that the judge reinstate the 562 claims because they said it was a condition of their agreement to withdraw those claims that you not seek such a thing. And then the judge in October of 2022 denies that. And then it comes later to what, early January, an email exchange that the other side says, we hereby tell you and commit that we are not going to appeal that refusal to reinstate. Correct. Okay. So yes, that is correct. And I was going to jump into the incorrect reconsideration, so I apologize. But so to answer the question, why wasn't that stipulation that the board entered effective? And the answer is, and this is I think also reflected in the ABS global case, is that it didn't totally eliminate their ability to challenge that, right? They needed to have the disavowal to be able to render their ability to challenge that moot because the rest of the case was still pending so that while that stipulation was there, they had moved to vacate it. And by all accounts... Let me ask it differently. Let's assume that the joint stipulation, you know, got entered. Well, it did get entered. Yes. But none of this post stipulation scuffling had occurred. There'd be no case or controversy here because the patent owner would be precluded from asserting those patents in light of the stipulation, right? Well, I think there were two things I think I need to make clear is their infringement claims underlying were only as to direct infringement. So what ultimately, when they filed their amended complaint, what ultimately was removed was only direct infringement. So there was concern that there was still the ability because they actually tried doing a subsequent amended complaint, add indirect infringement allegations in with respect to the other patent and the judge says, no, that's not what I told you to do. I told you to file an amended complaint that dropped these other infringement allegations, not also add indirect. So the allegations in the complaint were only as to direct infringement. So the concern was that when they filed the amended complaint, as the court ordered them to do, I think November 3rd of 2022, that there's still the possibility for them to assert indirect infringement claims of the future, which is why the disavowal was only as to the challenging the court's order and why we believe that the covenant not to sue, assuming that that is enforced, was necessary to render this move. When they filed the amended complaint without the 562 patent, you were still in fear they were going to assert indirect infringement allegations relating to the 562 patent? Well, that was still one concern. And the other concern too is, Your Honor, what this case down below was still ongoing because while we'd made representations that we're no longer selling, we're no longer manufacturing the product since, I think, November 2021. And we moved for summary judgment on that grounds because of the re-examination and that all the sales that occurred before the re-examination certificate had issued. They challenged that. They said that we were still manufacturing the product, that we were still... Why did you say they offered a covenant not to sue? Why did you reject that? Well, the covenant not to sue... Well, I didn't reject it. We said it didn't remove the injury in fact entirely because what they want to do is take this decision, this final written decision, and utilize it in the underlying litigation to support the non-obviousness of the parent 943 patent that has the same specification. And we know that because we attached as the addendum their validity contentions in response to our invalidity contentions that include, basically wrote the same arguments that they presented to the patent. So what today is the stake you have in overturning this final written decision? I would say assuming that the covenant not to sue is effective. And the only reason I raised that issue is because in their briefs, they are very careful in saying it was only offered. And I assume that we can resolve that today. And assuming that that is effective and is necessary, our stake is the real possibility that they can use this decision and intend to use this decision to buttress their invalidity arguments, or I'm sorry, their secondary consideration arguments in the district court with respect to the 943 patent. And we asked them in the communication if they would disavow the right to use, or the ability to use this opinion in the district court, and they didn't respond. And I think what's significant, and this is in footnote three of their reply brief, they acknowledge the interplay between. Well, I'm going to ask Mr. Bell about that. The second sentence of that was quite literally incomprehensible. The alternative? Yeah. But I still don't understand why, even in the absence of the covenant, this claim has been finally, and without an appeal right, been taken out of the litigation with prejudice. They cannot sue you on this patent anymore. Well, I would agree with the covenant not to sue. That is the case. Why do you need the covenant not to sue? They filed a claim. It dismissed with prejudice. That's claim preclusive of the assertion of this patent, unless you were doing more new products and you had said you're not. So why do you need the covenant? I mean, I think the issue is whether or not they can sue us doesn't mean that their ability to challenge that, you know, they filed a motion to vacate that stipulation because they thought... Let's assume that that they actually have bindingly given up in the January 3rd or 5th or something email and then the declaration attached to the red brief. Oh, Your Honor, I agree that in terms of injury in fact for infringement liability, and I think we've said this in our brief, to the extent that the covenant not to sue is effective issued as opposed to offered, there's no injury in fact that we're alleging with respect to the infringement liability. The arguments that we made in our brief as to injury, I think that's the timing that we were discussing, but as for the injury in fact that we're arguing here, it relates to the real possibility that they are going to use because as the court has said in Fox Factory, you can't have a presumption as to two separate patents that include two separate features. So the arguments that can be patent are directly affected by the board's decision with respect to the secondary consideration of non-obviousness. Would I be wrong in wondering whether the effect of that on the issue that you just mentioned, the Fox Factory issue, might actually favor you? We've thought about that too, Your Honor, and that is a possibility, but we're just trying to address the issues that are raised by this appeal for sure. I guess, did you just speak to cases like Algenesis and other of our opinions, which to me have made clear that these kinds of harms you're talking about, about in a parallel or subsequent litigation with respect to a different patent, are just too speculative to be considered concrete and imminent injury? Well, I think that Algenesis, Your Honor, is distinguishable because in that case, the priority decision that was made, they said that that priority decision could affect the scope of their patent portfolio and prosecution. To my knowledge, at least it wasn't reflected in the case. There wasn't a rejection for which that that was up. There wasn't anything that they specifically pointed to. And I know as Chief Judge Moore noted, they're not precluded from estoppel, so the issue is there a practical effect. And what she found is that they hadn't demonstrated it. And I would say here, we've demonstrated the effect. We've attached their validity contentions where they've actually raised the exact same argument. So that issue is presented that they, and we gave them the opportunity to say that they're not going to rely. I guess I didn't see in your briefing any kind of attempt to walk through and show us why there's some kind of hand-in-hand relationship between whatever's going on with possible secondary consideration arguments in your other litigation compared to what the board evaluated. I mean, we have pointed out and I had here that if you compared what they submitted in their 562 patent on a response. You're talking about your bravery. Okay. I didn't see it in here. The only issue that, the only addressing that we had with respect to this, because we didn't have the disavowal or covenant in October when we filed that, we included a footnote at the end addressing that we believe that it was not moot for the reasons that we stated. Everything else came out in January after we had the discussions with them and they offered the disavowal and then the covenant not to sue, Your Honor. So we've been talking about kind of threshold mootness issue and I don't want to add very much time to the argument, but if you want to take literally just less than a handful of minutes to make your most important points on the merits. Yes. Thank you, Your Honor. So what I would say is we don't believe that the board's decision is supported by substantial evidence. In Daphne's patent owner response, they tried to make a connection between this unique combination, and it was doing it in the context of presumption of nexus, but they cited only eight pieces of evidence for this purported praise. And what's significant is six of those pieces of evidence they cited for something other than what the board found to be the combination. They identified six of those pieces as being directed towards a 3D design in increased surface area of the elongated heating elements. So the elongated heating elements are the height, the 3D surface area is a shape of size or something else other than the elongated heating elements. And this is shown in the drawings, but then when the board ultimately found that this combination is what was the nexus, when it went through its opinion on page 36, appendix 36, it says that this praise was sufficient for nexus with this proxy argument. It's cited to functionality because the actual evidence of praise didn't discuss the features. But even if you accept that proxy argument, the functionality of quickly and effectively straightening the hair, or drying the hair and straightening it at the roots. And to keep, if I remember right, that A central, maybe B central thing was maybe their experts said actually these functionality benefits are pretty darn closely tied to not burning the scalp plus having a little moat of unheated elements around the edges. Yeah, and I think two things on that. First is... I'm sorry, and large surface area for the, to get lots of heat to lots of hair. We have reasons, we're not going to, for purpose of this not disputing that, even if you accept that to be the case and you look at the board's decision, the board never found or cited to any of that praise evidence that discusses both of those features. One of the features related to two of the elements and the other feature related to another of the element. And if you look at page 36, they talk about six of the pieces of evidence being attributable to, six of the pieces of the evidence being attributable to one of the functionality. And as to the other, the other two pieces of evidence do the other. So while they said this unique combination, even under this proxy argument of the functionality accepting Mr. Ganadja's testimony, they still didn't point to, and it was never shown by DAPNE, still didn't point to anything that demonstrated, any piece of evidence that showed the unique combination or both of those features under proxy. Thank you, Your Honor. And that will restore your remittal time. Thank you, Your Honor. Mr. Bell. Good morning, Your Honor. May it please the court. Dave Bell for the appellee. I think the threshold question here of lack of standing in jurisdiction or mootness is— Oh, actually, those might be separate things. And I think you've only argued mootness. You have not argued standing, which does have something to imply, perhaps, about when the case of controversy actually disappeared. Because we have said, right, if it disappeared before the notice of appeal was filed, indeed, before the final written decision, like here back in 2021, that would make a, be a standing problem, would not be a mootness problem. But you didn't argue that. Correct. So, so Apple, the Apple decision, for example, reflects exactly that principle, Your Honor. And we just thought it was easier and cleaner to say it's moot. We think ultimately there's no standing if the court analyzes it as it would of its own accord under Article III. In your brief, right from the beginning of the mootness section, you say this is moot because it's dismissed and we committed not to appeal that, the refusal to reinstate. Yes. Right. And so that seemed to me to be the, the event that caused the elimination of a case of controversy. It was past the final written decision. Indeed, it was after the notice of appeal, I guess, even after their opening brief here. So it's a real mootness issue, but not before. That's the way we presented it, simply for convenience, because we thought under ABS, there's no question. Once we disavow it, we just thought that this is all an unnecessary controversy. So we presented it in that way. We did tie it back, ultimately, to the stipulation. And there's been discussion here. I think the court is accurately informed of kind of the sequence of events that happened. I guess one, one reason that I think I'm concentrating on that is to keep the standing and mootness separate because we've said you're supposed to do that. But the other is that if the either, either the January or the February filing, the email or the accompanying affidavit here was the event that changed a non-moot case into a moot case, which is what you've argued, whatever else that was, that was unilateral. In which case, it would seem to be a circumstance in which the ordinary Munsingwear vacator principle would apply. And so here, here's what I would say to that. I think that's a reasonable understanding to look at that event. But I think if you look at it, not in isolation, but in kind of what led to it, we're not saying that this is completely un-utilateral. We're just saying that, that the other side had a hand in it. Yeah. Maybe, maybe not a very good one. But that's, that's I think the point here. If you look at the Supreme Court's decision in U.S. for example, it talks about the parties seeking vacature having no fault in it or no role in it. I forget the exact term in the court. Not having voluntarily taken the action. Exactly. And so I think here, this is ultimately the culmination of what started out as an agreement between the parties, ultimately a settlement. And just to level set for the court, one thing that's not on the table here is ground three. Ground three was not appealed. Ground three is at pages 52 and 53 of the appendix where the board said, for the exact same reasons, the secondary consideration factors also support the non-obviousness over that particular ground. So that ground remains regardless, which I think actually disposes of a lot of the concern the other side has with regard to its effect on other proceedings. Well, what effect, let's suppose that the final written decision is not vacated. What effect or what use do you think you can make of that decision? Or do you want to preserve the opportunity to make it? I'm candidly not sure. And we haven't cited the 542 decision at all in the 943 proceedings since it was finally disposed of. We haven't. You made the argument based on secondary considerations, but you didn't say, and for support, see the board decision. Am I remembering that right? That's correct. And I think Your Honor's point... Why are we fighting about vacater or not? I'm trying to understand what the practical consequences are. Right. I think as long as ground three stands, and I don't think there's any dispute that it will because they haven't appealed ground three, there's going to be an IPR estoppel effect based on that. There's going to be whatever effect might have is already baked into the cake on that one. And as Your Honor pointed out, I'm not sure that the decision on the 562 doesn't cut in favor. And when you say estoppel effect, you mean what, 315 or issue provision? 315, Your Honor. So there will remain a final written board decision at least as to ground three. So whatever effect it may or may not have... I'm trying to remember, in your surreply, do you make an argument that partial vacater is okay, but vacater, even if it occurred, could not reach ground three? I don't remember that. I don't think there's been... No, there's been no debate between the parties. But in their blue brief, they made clear at footnote one on page six that ground three is not at issue. So we take that kind of as the premise that nobody is challenging ground three or asking for vacature of ground three. That simply wasn't appealed. They could have appealed it. They chose not to. So that remains regardless. And so any effect of that, good or ill... Just so I make sure I'm following, if we were, let's say we think we need to vacate, would you agree that it would be a partial vacature as opposed to in its entirety? I just want to know what... We obviously don't think vacature is necessary, but let's assume the court disagrees. At most, we think a partial vacature for two reasons. One, and we did point this out in the surreply, there are other real parties and interests that were named below by Ontel that did not participate in the appeal. On the appeal, they said there are no other real parties and interests. So there's an estoppel effect under 315 that flows to those parties. And we submit as a matter of equity, since this is an equitable consideration, the court shouldn't vacate that effect as to those other parties. If they wanted to participate, they could have. They didn't, number one. Number two... I'm sorry. And you do have litigation pending in district court against one of them? We did at one point, but it has been dismissed. I see. So there's none pending against any of those four at this point. And then the second thing is, as Ontel acknowledged in its opening brief, ground three is not even at issue. So we think it wouldn't be, again, as an equitable matter proper to vacate as to ground three. So then you're left with grounds one and two as to Ontel. And I think... You could sense I wanted to ask you something. I appreciate that. I want to follow up on that weird term you used. You said, like, not entirely... I don't remember what it was, but could you explain to me what term you coined today? I'll try to do it a little more articulately. We're not saying that it's entirely unilateral on their part, but we're also saying it's not entirely unilateral on our part. What we're saying is that this resulted from an agreement between the parties to get the 562 out of the district court case. And the reason was, for good reason, both sides had good reason to do that. We wanted to go forward on the 943 and the design patent, and there were actually four asserted, not three. We wanted to do that. And they obviously wanted to get the 562 out of the case. And they succeeded, right? They agreed to it, first of all, and then they opposed any attempt to reinsert it. And we think once the district court said, okay, we're not going to reinsert it, that was final. So no later than that date, which, as the court pointed out, is October 5th of 2022. No later than that date, I think, there wouldn't have been jurisdiction here. They opposed reasserting it because their view was the joint stipulation had immediate effects against enforcing that patent against them, right? I think they didn't. I mean, maybe that's a question best for them. I think they didn't want to reinsert it because they didn't want to face the liability on it, potentially. I mean, they fought hard to get it out. Right. But the legal grounds for why it could not be reasserted, did they argue because of the binding effect of the joint stipulation? Right. I think their view was the joint stipulation didn't actually agree for them to not seek to stay in light of the 943 reexaminations. And am I remembering right that the district court in denying your motion to pretty carefully steered away from the stipulation, right, saying that it was your May 9th or 12th letter that said, if you lift the stay, we will do this, that it's going to hold you to, never mind the stipulation, because there was a dispute about whether there was a condition there that they had violated and all of that. I think that's a fair reading. I would put one gloss on that, Your Honor, that in our letter, which was docket entry 90 in the district court, we did say we would dismiss with prejudice, but in the same breath said, so that the 943 can continue. Now, maybe that wasn't as expressive a condition as it could have been, but that was brought to a head when the parties unequivocally. My only point is that the district court, I thought in the October order, pretty steered clear of, maybe not entirely, but mostly from the stipulation, that it was what you had represented to the court that mattered to the court. Right. And so in that order, Your Honor, the court did focus on the earlier letter. It didn't say that the stipulation wasn't effective. Of course, at docket entry 106, the court entered the stipulation and said it's subject to the conditions of that stipulation, but you're correct that the court said, look, there are many promises going on in this case, stipulation being one of them, but what I'm going to do is I'm going to hold you to the earlier promise, which in the court's view did not include a condition, but that still leaves a stipulation in place. And ultimately, once the court did that, there was no reasonable way we could challenge that. Right. I mean, it was done. It was out. We made our best argument for why we thought Ontel broke their agreement. The district court didn't buy it. It's out of the case. So Ontel got what it wanted. He raised in his argument, opposing counsel raised in this argument, some concern about assertion of indirect infringement allegations related to the 562 respond to that. Yes. Thank you for the question, Your Honor. This is one where we did a mea culpa in the district court. So in filing that amended complaint somehow, and I can't speak from personal knowledge, somehow indirect infringement allegations ended up in that amended complaint. Once that was pointed out to us, we immediately filed a letter with the district court apologizing for adding that and saying that was unintentional. I don't know if it was a cut and paste error. I don't know if, you know, there's multiple litigations going on. I could only speculate on that. But we fell on the sword on that one at docket 159 and filed the proper amended complaint, which simply removed the 562 and the 906. Can you talk a little bit about something that Mr. Arts did talk about, which is that, I guess, in your validity or invalidity contentions in the I expressed puzzlement about what the last sentence of your footnote three means, where you do seem to say something about how you tie together the 943 invalidity contentions and the pendency of this action. And I just didn't understand that. Candidly, Your Honor, I think it was inartfully phrased. So at the first level, give me the version that I'll understand. Sure. I think what we were getting at here, and to set the table, the nexus finding here was a nexus in fact, not a presumption. So the board went to the harder step, we think, and went ahead and did that. I think here's what we were trying to get at. In the event that that is somehow disturbed and sent back, and the board then maybe reconsiders the presumption step, that would then have an impact on our ability to argue a proceeding under Fox Factory, right? But as it currently stands, we're free to argue nexus in fact based on the limitations in the 943, utilizing some of the same evidence, certainly. When you make a nexus in fact finding, it's not a presumption. You don't have to show that it's coextensive with the product, the claim and the product. It makes sense for presumption, and it makes sense then you can't turn around and over here say, oh, it's also coextensive with this product. So I think kind of best read, maybe that's what we were getting at, but ultimately I don't think any interaction matters for the reason Judge Chen, you mentioned, that ends up being speculative. And so any effect thereon, it might even be a positive effect, is not enough for Article III injury. And even if it were, I think there might be a redressability problem. This just occurred to me a couple of days ago as I was preparing for this, that even if you could show that that was enough injury in fact to have standing, you ultimately still have ground three, which remains, which they didn't appeal. And so any impact on other proceedings, as I said before, is kind of baked in the cake. Do you have some, because you didn't make this suggestion of partial vacator as a lesser form of vacator, we don't have any briefing on it, do you have any case to point to that says sometimes Munsing wear is not all or nothing, but partial in this way? Right. So we have the, we did come up with one, Your Honor. Let's see if I can find it. The Syncor case. This court, SYNQOR, it's 988 F3rd 1341. What it did is, and I don't know if it's on all fours or not, but it's what we could come up with. It vacated a portion of the board's decision and said that it would collaterally stop certain claims and then other claims were moot. So it kind of directed a decision on one of the subsets and then it vacated the others as moot. And so there's something similar going on here, maybe not, as I said, right on all fours. But I think because it is an equitable remedy, the court is certainly free to kind of tailor it appropriately. And are you prepared to say that if the decision is not vacated, let's say at all, that you would not make any use of the decision in the 943 litigation? Well, here's my hesitation with unequivocally saying yes, which is what we would like to say to make sure it's not vacated. I just don't know how it's going to play out. So, for example, they asked us to commit to not even reference it, the 562. And I'm reluctant to kind of enjoin us somehow from, you know, kind of putting ourselves open to a gotcha type of situation where we reference it and then they say, aha, you said you wouldn't. That's the first point. The second point is... But you agree, for example, that it is... That we're not doing anything partial here, that there would be no issue-preclusive effect because the mootness would have eliminated the right to appeal and judgments that you can't appeal from don't have issue-preclusive effect. Well, I suppose if the alternative is the court vacates, then better to have a decision than no decision. So I honestly just don't know the we certainly aren't going to say it's... You know, the 562 not being presented, it's really just not relevant, we would submit to that other proceeding in that direct sense. And going back to Your Honor's question of why does anybody care about this, I think it's important because this was an invention that the inventor put together as an engineering professional and she came up with a brand new way to do things that was groundbreaking. It changed the industry. This is a validation for her. You know, she didn't choose to put her patent into IPR. It was challenged and managed to be upheld. And so, you know, if nothing else, it has an intangible value. Well, if she could still put, you know, the decision on the wall, even if it has no binding legal effect. Sure, sure. So there's that. And I think just in the course of kind of normal, ordinary procedure, the question really comes down to was this completely unilateral? Because if the court determines that it was completely unilateral, then Munsingware would suggest you should vacate. But we think that's not the case. And I think Munsingware itself has some useful language. It says vacature is warranted where the party seeking vacature is prevented from obtaining the review to which they're entitled. Now, they could have chosen not to agree for it to go out of the district court. That was a strategic choice and a reasonable one, right? They wanted it done. They wanted it out. And to the court's earlier question, that means they are considered non-infringing products for all time under ABS, which presented a similar circumstance. There was no need even for... Kessler Doctrine protection. No, this is just... Yes, right. So, exactly. There was no need even for a covenant not to sue there. There was no need for anything else. Once there was the disavowal, it was gone for all time. So, the question is, where did that disavowal really come from? And I think when you look at the back and forth starting from the stipulation forward, this didn't just come out of nowhere. We weren't just saying, oh, we want to prevent review. It came from this patent, the 562, and I see I'm well over time. The 562 was by agreement of the parties. They reached a reasonable agreement. Ultimately, the district court enforced it. But for that, we would be jurisdiction. But for that, we would have still been pressing this in the district court. That's kind of a thought experiment. The other side certainly wouldn't agree to put that back in. Now, they fought and they kept it out successfully pursuant to the party's agreement. And I think that, in the Munsingwar language, that forewent any review to which they might have otherwise been entitled. I think under the U.S. Bancorp decision for the Supreme Court, it's effectively a settlement. Whatever else happened, that's what triggered this whole sequence of events. And ultimately, we submit to pride as a court of jurisdiction. And as an actual matter, then, should simply be dismissal rather than vacate. Thank you, Your Honor. Thank you. Just a couple of points. I don't think it's fair to characterize this as a settlement. This started with their strategic decision to approach the court and offer to dismiss its claims under the 562 so it would lift the stay and proceed with the 943. The fact that the procedural vehicle in which that was reflected was a stipulation doesn't change, you know, for form, doesn't change the fact that this was a strategic unilateral decision on their part to drop the 562. And in the judge's October order that you mentioned, you're right. She didn't quite understand what the purpose of it was because they hadn't done what they had offered to do, which was to file an amended complaint dropping their claims of infringement under the 562 patent. Can you address this partial vacator idea, which at least I don't remember having read or heard? It was not addressed in their brief. The first time I've heard it was today. But, you know, I've sat there and tried to think, you know, in the short period of time. I'm not exactly sure how that would work or what the impact of keeping a decision on one ground from the patent office would be. I don't remember the details, but I guess there was a ground three challenge that the board also rejected. And you didn't appeal that rejection. That's correct, Your Honor. There was a ground three under another combination of references for which the board didn't find a motivation to combine. And so, in any event, it said... I see. Was that rejected on secondary considerations or on the initial step? If I recall, it was initially that we didn't make a motivation to combine, but there's statements in there as well saying if we had, then the same evidence of secondary consideration would apply there. And so, I guess, to answer your question, I'm not sure how the 315 would work with a partial vacator and certainly an interesting academic issue and how that would affect the race. The underlying facts that he stated, the opposing counsel stated, that ground three not on appeal. Do you agree with that? I do agree with that. Yeah, yeah. No, absolutely. So, I guess our point, this was a unilateral action. I don't see how this could be reasonably characterized as a settlement. And to Your Honor's point, they never challenged standing. Effectively argued that this was moot. Effectively acknowledging that what was needed to make this moot was the disavowal and or the covenant not to sue. So, under those circumstances, we believe the appropriate remedy, if it's moot, is to vacate the board's decision. The entire decision, even the part that's on appeal? They haven't argued, Your Honor, for a partial vacator. Now, if the court can do it in equity, which again, I haven't thought through because they hadn't raised it, but what was presented in the briefs and what we argued was that it should be vacated and relying on Judge in the ABS case, which in that case, it was a motion for summary judgment and decision of non-infringement, which I think makes the circumstances here different and also the timing. They raised it first at oral argument and we raised it in the briefs. Thank you. Thanks to both parties, all counsel. The case is submitted.